The Honorable Michael Lamoureux State Representative P.O. Box 1064 Russellville, AR 72811-1064
Dear Representative Lamoureux:
I am writing in response to your request for my opinion on the following questions:
 1. What oversight does the mayor of a city of the first class have over other elected officials of the city?
 2. Does the mayor have the ability to set office hours of other elected officials, set the office locations of other elected officials, deny expenditures from the budget of other elected officials, or have control over the day-to-day operations of other elected officials' offices?
You have not indicated whether the city of the first class that prompted your question is organized under the mayor-council, city manager or city administrator form of government.
RESPONSE
In response to your first question, I believe a mayor of a city of the first class having a mayor-council, as opposed to a city manager or city administrator, form of government may have some statutory oversight over other elected officials, but only in addressing allegations of misconduct in office. A.C.A § 14-43-504(b)(1). However, the scope of this statute is unclear and it has not been interpreted as granting oversight authority over other elected officers since its enactment in 1875. With respect to your second question, unless the governing council dictates otherwise with respect to activities subject to its control, I believe the answer is "no." I will note, however, that the mayor of a city of the first class having a mayor-council form of government does have the authority to propose a city budget for the city council's approval.
Question 1: What oversight does the mayor of a city of the firstclass have over other elected officials of the city?
With respect to the general oversight powers of a mayor in a city of the first class having a mayor-council form of government, A.C.A § 14-43-504
(Repl. 1998) provides in pertinent part:
 (a) The mayor of the city shall be its chief executive officer and conservator of its peace. It shall be his special duty to cause the ordinances and regulations of the city to be faithfully and constantly obeyed.
(b) The mayor shall:
 (1) Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction;[1]
* * *
 (3) Perform such other duties compatible with the nature of his office as the city council may from time to time require.
With respect to mayoral powers in a city of the first class having a city manager form of government, A.C.A § 14-47-116 (Repl. 1998) provides in pertinent part:
(b) The mayor shall have the following powers:
(1) He shall preside at all meetings of the board;
 (2) He shall be recognized as the head of the city government for all ceremonial purposes and by the Governor for the purposes of military law;
 (3) He shall sign, on behalf of the city, all written agreements, contracts, bonds, mortgages, pledges, indentures, conveyances, and other written instruments, the execution of which has been approved by the board; and
 (4) He may vote on all matters coming before the board but shall have no veto power.
With respect to mayoral powers in a city of the first class having a city administrator form of government, A.C.A § 14-48-111 (Repl. 1998) provides in pertinent part:
 (a)(1) The mayor of a city having the city administrator form of government shall be recognized as the head of the city government for all ceremonial purposes and by the Governor for the purposes of military law.
 (2) He shall sign on behalf of the city all written agreements, contracts, bonds, mortgages, pledges, indentures, conveyances, and other written instruments, the execution of which has been approved by the board of directors.
 (3) He shall serve as chairman of the board and shall preside at regular and special meetings of the board, but he shall not have a vote on any matter coming before the board.
 (b)(1) The mayor shall have the power of veto over all decisions made by the board except matters relative to city personnel.
 (1) A veto by the mayor may be overridden by the affirmative vote of five (5) or more members of the board.
The only one of these statutes that might possibly be read as affording a mayor an "oversight" power over elected city officials is A.C.A §14-43-504(b)(1), which grants the mayor supervisory authority over "the conduct of all the officers of the city" in a city having a mayor-council form of government. In considering the scope of this authority, the question initially arises whether an elected city official might be categorized as an "officer of the city" as that term is used in this statute.
Unfortunately, the legislative history is unclear on this score. The provisions of A.C.A § 14-43-504(b) are old, dating back verbatim toAct 1 of 1875, which established cities of the first class. Acts1875, No. 1, § 53. The Arkansas Supreme Court has never found occasion to consider what degree of mayoral supervisory control, if any, this statute confers over other elected municipal officials. It may be significant that the only other references to "officers" in § 53 of Act 1 are to "officers of the police and watchmen" — a restricted category that may qualify the provisions of A.C.A. § 14-43-504(b)(1). Section 2 of Act 67 of 1885, which amended Act 1 of 1875, further afforded the mayor a conditional "right to remove for inefficiency, misconduct, or neglect of duty, any officer, servant or employee appointed by him or the city council." It is further unclear whether this reference to appointive offices might be read as restricting the oversight authority set forth in A.C.A §14-43-504(b)(1). I will note, however, that as a matter of practice, mayors have historically tended to avoid exercising supervisory authority over other elected officials.
Notwithstanding what appears to have been the custom and practice, the term "officer" has often been read as including an elected official. As one of my predecessors noted in discussing the status of one particular elective officer:
 A city treasurer is . . . classified as a public officer in 56 Am.Jur. 2d Municipal Corporations, Counties and Other Political Subdivisions §§ 235 and 236, where it states:
 Among those who have been held to be public officers are town or township trustees, supervisors, constables, treasurers. . . .
Ark. Op. Att'y Gen. No. 94-351. Moreover, A.C.A § 14-43-502(b)(3) (Repl. 1998) authorizes the city council to provide for the election of what the legislature has identified as necessary "city officers" in addition to those expressly authorized in the Code.
As noted above, A.C.A § 14-43-504(b)(1) charges the mayor with authority to "examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction." The Code is unfortunately silent as to the scope of the mayor's authority in "properly punishing" city officers for transgressions. However, regardless of what the scope of this authority might be and whether this it extends to other elected officials, I do not believe a mayor has the authority to supervise an elected official's day-to-day conduct of his or her assigned tasks. As my predecessor noted in Opinion No. 94-351:
 This section [A.C.A § 14-43-504(b)(1)] seems to give authority to the mayor only over any inappropriate conduct of an officer of the city, and the proper punishment of any misconduct. I do not think the legislature intended to grant a broad power to the mayor to supervise day-to-day activities of other city officers. There is also no distinction in regard to whether the officer of the city is appointed or elected. Therefore it is my opinion an appointed city treasurer is not under the supervisory authority of the mayor as far as the treasurer's day-to-day duties are concerned.
I fully agree with these conclusions.
In my opinion, a mayor's admonitory power, if any, over elected officials is restricted by the principle that the official must be permitted to perform the duties the electorate charged him or her to perform. In accordance with this principle, when asked whether a mayor has the authority to bar a recorder/treasurer from city hall, which contained the recorder/treasurer's office, one of my predecessors opined:
 The recorder/treasurer has clearly been placed in office either by the general electorate pursuant to A.C.A. § 14-44-115, or by a majority vote of the city council in order to fill a vacancy pursuant to A.C.A. § 14-44-116. In either instance, any attempt by the mayor to obstruct the recorder/treasurer from performing the duties to which he or she was elected would constitute a subversion of the will of the electorate, and could give rise to legal action.
Ark. Op. Att'y Gen. No. 96-052. Although the statutes recited in this opinion relate to a city of the second class, I believe the principle applies equally to a city of the first class.[2]
Question 2: Does the mayor have the ability to set office hours of otherelected officials, set the office locations of other elected officials,deny expenditures from the budget of other elected officials, or havecontrol over the day operations of other elected officials' offices?
As suggested in Opinion No. 94-351, elected municipal officials are entitled to considerable autonomy in determining how to discharge their assigned duties. Although A.C.A § 14-43-504(b)(1) charges the mayor with the duty to investigate and to address complaints of misconduct by officers in a city of the first class having a mayor-council form of government — a duty that may or may not include monitoring the misconduct of other elected officials, see discussion supra — no statute authorizes a mayor to interfere in the ways suggested in your question with the day-to-day operations of another elected official's office.
Specifically with respect to the issue of office hours, I agree with my predecessor's analysis in Ark. Op. Att'y Gen. No. 2000-244:
 A.C.A. § 14-14-110(a) dictates that "all records and other written materials in the possession of a local government shall be available for inspection and copying by any person during normal business hours." In addition, the" reasonable access" provision of the Arkansas Freedom of Information Act, A.C.A. § 25-19-105, likewise dictates that records be available for inspection and photocopying during normal working hours.
Subject to this condition of reasonable access during business hours, I believe the city council has ultimate control over office hours. As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-024:
 The city council . . . possesses local legislative authority regarding city affairs. See A.C.A. § 14-43-502 (Supp. 2001). This office has previously opined that these provisions offer persuasive support for the council's authority to establish the hours during which the city office must be open. Op. Att'y Gen. 96-328. Cf. Walker v. Washington Co., 263 Ark. 317, 564 S.W.2d 513 (1978) (upholding an ordinance, enacted pursuant to the quorum court's local legislative authority, requiring that all county constitutional offices be open to serve the public from 8:00 a.m. until 4:30 p.m.)
Absent any such ordinance and again subject to the condition regarding access to documents, I believe an elected official has the discretion to control his or her own office hours.
With respect to issues of office location, A.C.A § 14-43-502(b)(1) (Repl 1998) provides:
 The council shall have the management and control of finances, and of all the real and personal property belonging to the corporation.
In light of this provision, I believe that unless the council has expressly declared otherwise, it will have ultimate control over office assignments. As a matter of practice, however, I suspect that municipal governing bodies may delegate decisions regarding office assignments to a mayor, city manager or city administrator as an executive function — subject, of course, to the understanding that such assignments will be designed to maximize the elected officials' efficiency in office.
With respect to the issue of budgeting and expenditures, A.C.A §§14-58-201 through -203 (Repl. 1998) provide:
 On or before December 1 of each year, the mayor of all cities and incorporated towns having the mayor-council form of government shall submit to the governing body of the city or town, for its approval or disapproval, a proposed budget for operation of the city or town from January 1 to December 31 of the forthcoming year.
A.C.A. § 14-58-201.
 Under this subchapter, the governing body of the municipality shall, on or before February 1 of each year, adopt a budget for operation of the city or town.
A.C.A. § 14-58-202.
 (a) The approval by the municipal governing body of the budget under this subchapter shall, for the purposes of the budget from time to time amount to an appropriation of funds which are lawfully applicable to the items therein contained.
 (b) The governing body may alter or revise the budget and unpledged funds appropriated by the governing body for any purpose may be subsequently, by action of the governing body, appropriated to another purpose, subject to the following exceptions:
 (1) Funds resulting from taxes levied under statutes or ordinances for specific purposes may not be diverted to another purpose;
 (2) Appropriated funds may not be diverted to another purpose where any creditor of the municipality would be prejudiced thereby.
A.C.A § 14-58-203.
As these statutes reflect, in a city of the first class having a mayor-council form of government, the mayor proposes a budget and the city council approves it. However, I am informed that elective officers in some cities prepare and submit their own proposed budgets or that a budget committee of the city's governing body oversees the preparation of a proposed budget. As a matter of practice, then, it appears that flexibility is the operative principle in preparing a budget. In my opinion, once the budget for a particular elective office has been approved, subject to the possible "oversight" authority discussed above in the case of misconduct, the mayor lacks the authority to control the elective officer's expenditures.
No provisions of the subchapters of the Code devoted to the city manager form of municipal government, see A.C.A § 14-47-101 et seq., or the city administrator form of municipal government, see A.C.A § 14-48-101 etseq., authorize a mayor of a city of the first class to engage in any of the activities itemized in your question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB:JD/cyh
[1] This supervisory function may not apply if the city has a civil service commission. See generally discussion in Ark. Op. Att'y Gen. No.2000-283.
[2] One of my predecessors expressed as follows a similar conclusion regarding the scope of a city council's authority to dictate how an elected official performs his or her assigned tasks:
 It may be that the statutorily granted right to impose substantive duties on recorders and treasurers does not carry with it a concomitant right to dictate how those duties will be performed. See Ark. Op. Att'y Gen. No. 96-052 (opining that a mayor could not require a treasurer/recorder to submit to annual job evaluations: "The question of whether a recorder/treasurer has adequately performed the duties of the office is one that must be addressed by the electorate, rather than by the mayor."); cf. La. Op. Att'y Gen. No 83-308 (statute granting local legislative body broad legislative power supported ordinance setting treasurer's office hours).